**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | § § § | |
| Plaintiff, | § | |
| v. | § § | |
| AGUILA CONSTRUCTION, LP, AGUILA CONSTRUCTION GP, LLC, TRES POBRES, LTD, WILLIAM CLAYTON BROWN, JR., MINDA Y. FORRESTER, and WILLIAM CLAYTON BROWN, III, | § § § § § § § | Civil Action No. 5:20-cv-00969 |
| Defendants. | § | |

**LIBERTY MUTUAL INSURANCE COMPANY'S ORIGINAL COMPLAINT**

Liberty Mutual Insurance Company ("Liberty") complains of Aguila Construction, LP, Aguila Construction GP, LLC, Tres Pobres, LTD, William Clayton Brown, Jr., Minda Y. Forrester, and William Clayton Brown, III (collectively "Indemnitors") as follows:

**I.
PARTIES**

1.       Liberty is a Massachusetts company authorized to do business in Texas with its principal place of business in Boston, Massachusetts. Liberty is therefore a citizen of the State of Massachusetts for purposes of 28 U.S.C. § 1332.

2.       Aguila Construction, LP ("Aguila LP") is a limited partnership incorporated in the State of Delaware with its principal place of business in Texas. Aguila LP is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332. Aguila LP may be served with process by serving its registered agent, William Clayton Brown, at 1152 Ferry St., Ste D, Eagle Pass, Texas 78852, or wherever they may be found.

3.      Aguila Construction GP, LLC ("Aguila LLC") is a corporation incorporated in the State of Texas with its principal place of business Texas. Aguila LLC is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332. Aguila LLC may be served with process by serving its registered agent, W. Clayton Brown, at 1152 Ferry St., Ste D, Eagle Pass, Texas 78852, or wherever they may be found.

4.      Tres Pobres, LTD ("Pobres") is a corporation incorporated in the State of Texas with its principal place of business in Texas. Pobres is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332. Pobres may be served with process by its registered agent, W. Clayton Brown, at 3015 Iron Stone Court, San Antonio, Texas 78230, or wherever they may be found.

5.      William Clayton Brown, Jr. is an individual resident and citizen of the State of Texas, who may be served with process at 3015 Iron Stone Ct., San Antonio, Texas 78230, or wherever he may be found.

6.      Minda Y. Forrester is an individual resident and citizen of the State of Texas, who may be served with process at 3015 Iron Stone Ct., San Antonio, Texas 78230, or wherever she may be found.

7.      William Clayton Brown, III is an individual resident and citizen of the State of Texas, who may be served with process at 8403 Fairway Valley Dr., Boerne, Texas 78015, or wherever he may be found.

## II.
## JURISDICTION

8.      This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332 in that this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs.

**III.**
**VENUE**

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as one or more of the Indemnitors are residents of the State of Texas and reside in this judicial district and a substantial part of the events giving rise to the claims occurred in this judicial district.

**IV.**
**FACTS**

10.     On September 2, 2005, Aguila LLC, Pobres, Clayton, Jr., Forrester, and Clayton III executed an Agreement of Indemnity in favor of Liberty ("2005 Agreement"). A true and correct copy of the 2005 Agreement is attached hereto as Exhibit A. The 2005 Agreement was executed and delivered to Liberty as consideration for Liberty issuing certain surety bonds on behalf of Aguila LLC, Pobres, Clayton, Jr., Forrester, and Clayton III.

11.     On December 6, 2016, Aguila LP, Aguila LLC, and Clayton III executed a separate General Agreement of Indemnity ("2016 GIA") also in favor of Liberty. A true and correct copy of the 2016 GIA is attached hereto as Exhibit B. The 2016 GIA was executed and delivered to Liberty also as consideration for Liberty issuing certain surety bonds on behalf of the Indemnitors. Collectively, the 2005 Agreement and the 2016 GIA are the "Indemnity Agreements".

12.     Pursuant to the terms of the 2016 GIA, the 2016 GIA is in addition to and not in lieu of the 2005 Agreement. The Indemnity Agreements remain in full force and effect.

13.     In reliance on the Indemnity Agreements, and at the request of Indemnitors, Liberty issued certain payment and performance bonds on behalf of Indemnitors the ("Bonds") relating to certain construction projects (the "Projects"). For instance, Liberty issued a performance bond number 022021291 naming Aguila LP as principal and the Camino Real Community Services as obligee on the project known as Camino Real Crisis Center – Maverick

Co. Crisis Residential Program (the "Camino Project"). Liberty also issued performance bond number 022056879 (formerly Bond No. 0220021294) naming Eagle Pass Independent School District as obligee on the project known as Eagle Pass Junior High and Student Activity Center Tennis Court Addition (the "Eagle Pass Project").

14.     Claims have been made on the Bonds. As a result of such claims, Liberty has incurred losses and expenses including, but not limited to, court costs, attorneys' fees, and consultant fees, which presently in the aggregate are in excess of $84,339.00. Liberty is also exposed to additional loss, costs, and expenses of at least $350,000.00, as a result of having issued Bonds on the Projects.

15.     Pursuant to the 2005 Agreement, the Indemnitors agreed in relevant part to:

Second: That we, the contractor (and the indemnitors, if any) will at all times indemnify and save the surety harmless from and against any and all loss, cost, claim, demand, liability and expenses of whatever kind or nature which it shall at any time sustain, incur, or be put to, for, by reason, or in consequence of such bonds which have been or may hereinafter be executed or procured on behalf of the contractor, including all costs, counsel fees and expenses incurred in investigating any claims made under or concerning such bonds, or in collecting any premiums due or losses sustained on such bonds, or in prosecuting or defending any actions, suits, or other proceedings which may be commenced or prosecuted against the contractor, or against the surety, upon such bonds, or in anyway relating thereto; we the contractor (and the indemnitors, if any) further agreeing, that in any accounting which may be had between the surety and contractor, or between the surety and the indemnitors, or either or both of them, the surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement of Indemnity, under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the surety shall be prima facie evidence of the fact and amount of our liability to the surety.

Ninth: That the surety shall have the right to adjust, settle or compromise any claim, demand suit or judgment upon such bonds, or any of them, and if claim is made against the surety, or if the surety deems it necessary to establish a reserve for potential claim, cost, expense or other liability, and upon demand from the surety, the contract (and the indemnitors, if any), whether or not the surety shall have made any payment, will immediately deposit with the surety cash or other

property acceptable for the surety, as collateral security, equal to such reserve, (and any increase thereof) and any expenses or attorney's fees.  The Surety shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the contractor (and the indemnitors, if any), would be obligated to indemnify the surety under the terms of this agreement.  They surety shall have no obligation to invest, or to pursue a return on, the deposit.

*See* Exhibit A at 1, 2.

16.     Similarly, the 2016 GIA states, in relevant part, that:

4.     INDEMNITY: Indemnitors shall exonerate, hold harmless, indemnify, and keep Surety indemnified from all liability for Loss. Indemnitors shall pay Surety for Loss promptly upon demand. If Surety makes any Loss payment, Indemnitors agree that in any accounting between Surety and Principals, between Surety and Indemnitors, or wither or both of them, Surety is entitled to recover from Indemnitors all disbursements made by it in good faith under the belief that it is or was or might be liable for the sums and amounts disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by Surety shall be prima facie evidence of the fact and amount of the liability to Surety.

5.     COLLATERAL: Upon the Event of Default or determination by Surety that a potential Loss exists, Surety may demand that Indemnitors deposit a sum of money equal to an amount determined by Surety, or collateral security of a type and value satisfactory to Surety, to cover the Loss, whether or not Surety has: (a) established or increased any reserve; (b) made any Loss payment; or (c) received any notice of any claims thereof. At Surety's sole option, this collateral may be in addition to and not in lieu of any other collateral, and Surety may make multiple demands for collateral. Unless Indemnitors and Surety agree otherwise in writing, Surety shall have the right to use any collateral or any part thereof in payment or settlement of any liabilities for which Indemnitors would be obliged to indemnify Surety and Surety shall have no obligation to invest or to provide a return on any collateral provided.

*See* Exhibit B, ¶¶ 4, 5.

17.     Liberty has demanded that Indemnitors honor their obligations under the Indemnity Agreements. Despite such demand, Indemnitors have wholly failed and refused to indemnify Liberty and hold it harmless from any and all liability, demands, losses, claims, suits, judgments, fees, costs and expenses of whatsoever kind or nature (including, but not limited to

pre and post-judgment interest, court costs, consultant and counsel fees and expenses) which Liberty may pay, sustain, or incur by reason of issuing the Bonds.

**V.**
**CAUSES OF ACTION**

**COUNT ONE**
**BREACH OF GENERAL AGREEMENT OF INDEMNITY**

18.     Liberty incorporates and realleges the factual allegations in the foregoing paragraphs as if set forth herein.

19.     Indemnitors have failed to honor their obligations under the Indemnity Agreements and exonerate and indemnify Liberty.

20.     As a result of Indemnitors' breach of the Indemnity Agreements, Liberty has sustained losses and expenses, including, but not limited to, attorneys' fees and consultant fees, and continues to sustain losses and expenses.

21.     Pursuant to the clear terms of the Indemnity Agreements, Liberty is entitled to a judgment for indemnity and exoneration against Indemnitors for Liberty's losses and expenses including, but not limited to, attorneys' fees and consultant fees incurred as a result of issuing the Bond to Indemnitors and pursuing its rights of indemnification.

**COUNT TWO**
**COMMON LAW INDEMNIFICATION**

22.     Liberty incorporates and realleges the factual allegations in the foregoing paragraphs as if set forth herein.

23.     By virtue of payments made and expenses incurred by Liberty in connection with the Bonds, Aguila LP received valuable benefits equal to at least the amount of the payments made by Liberty.

24.     As a result of such payments and expenses, Aguila LP impliedly agreed to indemnify Liberty for all such payments.

25.     Aguila LP has failed to fulfill its indemnity obligations to Liberty. Because of Aguila LP's breach of its common law indemnity obligations, Liberty has suffered a direct and proximate loss and is entitled to recover from Aguila LP its losses and expenses (including, but not limited to, attorneys' fees and consulting fees) incurred as a result of issuing the Bond to Aguila LP and pursuing its rights of indemnification.

## COUNT THREE
### COLLATERALIZATION/QUIA TIMET

26.     Liberty incorporates and realleges the factual allegations in the foregoing paragraphs as if set forth herein.

27.     In addition to the contractual requirements set forth in the Indemnity Agreements requiring Indemnitors to reimburse Liberty and make a payment to Liberty equal to the amount Liberty has set in reserve for loss in excess of that which is currently incurred, Liberty has a common law right to require Indemnitors to post collateral to avoid depletion of Indemnitors' assets and to ensure faithful performance of Indemnitors' obligations.

28.     Liberty seeks an order requiring Indemnitors to post collateral in the amount of $350,000 pending the outcome of this action to avoid depletion of Indemnitors' assets and to ensure faithful performance of Indemnitors' obligations.

## COUNT FOUR
### EXONERATION

29.     Liberty incorporates and realleges the factual allegations in the foregoing paragraphs as if set forth herein.

30.     Under the Indemnity Agreements and the doctrine of equitable exoneration, Liberty is entitled to be exonerated by Indemnitors from all losses, costs, and expenses threatened or incurred as a result of the issuance of the Bonds. Liberty seeks entry of a judgment requiring Indemnitors to fully exonerate Liberty from such losses, costs, and expenses.

## COUNT FIVE
### ATTORNEYS' FEES

31.     Liberty incorporates and realleges the factual allegations in the foregoing paragraphs as if set forth herein.

32.     Indemnitors have failed to honor their obligations under the Indemnity Agreements and exonerate and indemnify Liberty. As a result of this failure, Liberty has been compelled to engage the law firm of Clark Hill Strasburger to bring this action against Indemnitors for the enforcement of the Indemnity Agreements. Pursuant to the terms of the Indemnity Agreements, Liberty is entitled to recover from Indemnitors, in addition to the amount of its damages suffered as a result of Indemnitors' breach of contract and sought in this Complaint, attorneys' fees incurred not only in the prosecution of this suit but also in the investigation and response to the claims asserted against the Bond issued by Liberty for the Projects.

33.     In addition to its right to attorneys' fees under the Indemnity Agreement, Liberty is entitled to reasonable attorneys' fees in addition to the amount of its damages suffered as a result of Defendants Aguila LP, Pobres, Clayton, Jr., Forrester, and Clayton III's breach of the Indemnity Agreements pursuant to § 38.001 of the Texas Civil Practices & Remedies Code.

## COUNT SIX
### COSTS AND INTEREST

34.     Liberty incorporates and realleges the factual allegations in the foregoing paragraphs as if set forth herein.

35.     Additionally, Liberty is entitled to recover from Indemnitors, jointly and severally, all court costs plus pre-judgment and post-judgment interest at the maximum legal rate allowed by law.

## VI.
## CONDITIONS PRECEDENT

36.     All conditions precedent to Liberty's entitlement to assert the above claims and causes of action have occurred or have been satisfied, waived, or excused.

## VII.
## REQUEST FOR RELIEF

Liberty requests that Indemnitors be cited to appear, answer this Complaint, and that the Court award Liberty the following relief:

A.  Judgment against Indemnitors, jointly and severally, in favor of Liberty in the amount of Liberty's actual damages, including but not limited to, its loss, costs, and expenses incurred through the time of trial;

B.  Order for Indemnitors to post collateral pursuant to the terms of the Indemnity Agreement by depositing funds with Liberty in the amount of $350,000;

C.  An award of attorneys' fees, costs of the court, pre-judgment and post-judgment interest at the maximum amount allowed by law;

D.  Such other and further relief at law or in equity to which Liberty is justly entitled.

Respectfully submitted,


 */s/ Christopher R. Ward*
CHRISTOPHER R. WARD
Texas State Bar No. 24008233
cward@clarkhill.com
PHILLIP W. PEMBERTON
State Bar No. 24107892
ppemberton@clarkhill.com
CLARK HILL STRASBURGER
2600 Dallas Parkway, Ste. 600
Frisco, Texas 75034
Telephone:      (214) 651-4722
Facsimile:      (214) 659-4108

ATTORNEYS FOR LIBERTY MUTUAL
INSURANCE COMPANY